For plaintiff: Fitzgerald & Higgins.

For defendant: Ralph M. Greenlaw.

---

Oscar A. Jette
vs.　Div. No. 19638
Bertha A. Jette

November 19, 1926

BAKER, J. Divorce. The petitioner in this case alleges in his petition as grounds gross misbehavior and extreme cruelty on the part of the respondent, and in the petition he asks that he be awarded the custody of two minor children, both boys, approximately of the ages of seven and five years.

A motion in the nature of a cross petition filed by the respondent has heretofore been discontinued by her.

A consideration of the testimony presented satisfies the Court that the petitioner has not succeeded in proving by a fair preponderance of the testimony that the respondent has been guilty of extreme cruelty toward him. Undoubtedly, in the past few years of their married life, the petitioner has been mentally upset and worried by conditions in his home, but this situation has not apparently seriously affected his health or prevented his continuing his usual occupation. There is evidence relating to a few occasions when the petitioner claims that the respondent used physical violence toward him. The respondent's testimony conflicts seriously with the petitioner's as to these occasions. The Court finds that even if they occurred as the petitioner alleges, they would not justify the Court in holding that they constituted extreme cruelty warranting the granting of a divorce on that ground. The evidence, in the judgment of the Court, shows no prolonged or systematic series of acts constituting, in the eyes of the law, extreme cruelty on the part of the respondent, and, further, it is clear from the testimony that in many instances the parties lived together as husband and wife after many of the arguments or disputes took place, and it can be seriously urged that as to these there was condonation.

The gist of the petitioner's case relates to the charge of gross misbehavior.

It seems to the Court that the picture presented by the evidence shows a gradual growing apart, in the last few years, of the parties to this case. The petitioner would appear to be a rather matter of fact man, interested in his business, who of necessity is compelled to work long hours, and who is able to devote little time to his family, although he unquestionably is fond of them. For several years the petitioner has had no automobile to use for pleasure.

The respondent, on the other hand, is a woman fond of music and dancing, and enjoyment outside of the home. Owing to the fact that she made a vow when very ill not to go to the theatre for some years, this form of pleasure has been denied her. This state of affairs apparently brought about a serious situation in the family life.

Since the fall of 1923 the parties have gradually become more estranged. At that time the respondent apparently began going to public dances with her sister and a niece who at that time were staying in Pawtucket with her. The petitioner objected but to no avail. The Court believes that at this time the respondent was entirely innocent in her desire merely to hear music, have a good time and enjoy herself, but that gradually the attendance at these public dances threw her into the company of persons who, perhaps, were not entirely desirable acquaintances in every case. Matters continued thus through the year 1924. The petitioner at this time purchased a house. In the winter of 1924 and '25, it appears that the respondent was quite seriously ill and had an operation in New Bedford where her parents lived. As soon as she recovered in the late spring or early summer, she began going out again to dances, over the objection of the petitioner, sometimes alone and sometimes with other women. Music lessons were taken up but soon afterwards dropped. In June, 1925, the respondent apparently met Mr. Lord for the first time at a dance. In the fall of 1925, the latter began calling at the petitioner's home and the respondent, with other members of the family, went to several dances in the company of Mr. Lord. About Thanksgiving time in 1925, a very serious

dispute arose between the petitioner and the respondent in regard to the latter's actions. The testimony is conflicting as to just what did occur, but it is clear that the situation was serious. At this time the petitioner first consulted an attorney, as he says he felt it was useless to keep objecting to his wife any more. Following the advice of his attorney, detectives were employed and the petitioner's case on the charge of gross misbehavior rests chiefly on two alleged occurrences which are said to have taken place in Pawtucket in the automobile of Mr. Lord on the nights of December 4th and 11th, following two public dances. The statement of what took place at these times is supported by the testimony of four men, three of them detectives and one of them the driver of their machine. It is clear that if their evidence is to be believed, then the respondent is guilty of conduct constituting gross misbehavior repugnant to and in violation of the marriage covenant.

The Court, of course, realizes that testimony of this type should be most carefully scrutinized. Detectives are employed and paid by the parties hiring them and are to a certain extent interested witnesses. In this particular case, there are some inconsistencies and improbabilities in the testimony as given by these men. It should be borne in mind, however, that the driver of the car was not a trained observer or an employee of the detective agency. Giving these things due consideration, it would, however, clearly appear that on the main facts the testimony of the detectives is fairly consistent. The witness Behneke, assistant manager of the agency, made a very favorable impression on the Court. He testified in an apparently frank and open manner and with restraint and without personal feeling. The Court feels considerable confidence in his testimony.

The respondent and Mr. Lord absolutely deny the occurrences testified to by the detectives. Their explanation as to why the automobile was stopped on the nights in question and the lights turned off is not, however, very convincing to the Court. Further in the opinion of the Court, Mr. Lord in his manner of testifying and in the scope of his evidence in general did not inspire in the Court any great confidence.

The respondent also urges in defence her physical condition at the time the occurrences in question are said to have happened. In this she is not corroborated by the testimony of any physician, and in view of the fact that she was out more or less constantly and dancing frequently, the Court has considerable doubt as to the truth of her testimony in this connection.

The petitioner introduced two exhibits, namely, 1 and 2, which in the judgment of the Court tend to corroborate him that the friendship between the respondent and Mr. Lord was not entirely innocent. While the two pictures with the handwriting of Mr. Lord thereon are not in themselves particularly incriminating, nevertheless, when considered with all the other evidence in the case, they satisfy the Court's mind that they are not such missives as a married man usually sends to another man's wife. It is admitted that these were sent and received, and the Court believes in something more than a spirit of jest.

There is in the case testimony that there is some more or less distant relationship between Mr. Lord and the parties involved, but it is a curious coincidence that Mr. Lord had not had occasion to visit the Jette home for several years past until the fall of 1925 after he had met respondent at dances, but that from before Thanksgiving time, 1925, on to the date of the petition and after, he has been extremely frequently in her com-

pany. Common experience usually can lead to but one conclusion where such a situation exists between persons married, but not to each other.

After giving all the testimony in the case relating to the alleged acts of gross misbehavior said to have been committed on the nights of December 4th and 11th, 1925, careful and serious consideration, the Court finds that the petitioner has established by a fair preponderance of the testimony in the case that on said dates there were such occurrences which constituted gross misbehavior repugnant to and in violation of the marriage covenant on the part of the respondent.

In addition, however, to the general denial of the allegations of the petition by the respondent, she also urges that the petitioner is not entitled to a divorce because he himself has been guilty of improper conduct and conivance in connection with the acts alleged.

In regard to the first matter, the respondent placed on the stand a witness named Swanwick, who testified to seeing on one occasion the petitioner in a room with his father and a young woman. The young woman's identity is not disclosed and apparently nothing occurred on the occasion in question. This occurrence was denied by the petitioner and his father. Assuming the incident took place, however, the Court sees nothing in this one happening which would stand in the way of the petitioner's relief, provided he has proved his own case.

The respondent also claims that the testimony shows that the petitioner was guilty of cruelty and neglect toward her. She mentions in particular certain occasions when she claims she was struck, and also the occasion when she was compelled to go to New Bedford for an operation, and other instances.

The Court has examined the testimony in regard to these matters carefully and does not find that they constitute such action on the part of the petitioner as to prevent his obtaining relief. Most of the actions claimed as cruelty grew out of arguments relating to the respondent's conduct and to other family affairs, and it would appear that the petitioner and the respondent were equally to blame for what took place. The testimony is somewhat conflicting as to what happened at these times, but it is clear that the parties lived as husband and wife thereafter, and it would seem as though there might be condonation for what occurred.

In regard to the petitioner's conduct just before and after the respondent had an operation in New Bedford, it appears to the Court that on the whole he acted reasonably in the matter. He, perhaps, was not as attentive as he should have been, but he felt that his work required his attention in order that he obtain money to meet the expense growing out of the operation, and apparently he felt that the respondent, who was in New Bedford with her own family, would be well looked after. The testimony shows clearly that he sent some presents to his wife while she was in New Bedford and went there as often as he felt that he could, and wrote to her.

Taking all the testimony on this point into consideration and considering the means and the station in life of the parties, the Court does not feel that the petitioner has been guilty of such conduct as to prevent his maintaining his petition.

In regard to the matter of connivance, the Court has considered this question carefully because, if proved, clearly the petitioner would not be entitled to relief.

The respondent contends that this whole matter is more or less of a plot originating with petitioner's father and mother. It is undoubtedly

unfortunate that the petitioner has been in the past few years compelled to be more or less dependent upon his father and his father's business, and possibly the evidence shows that there has not been the proper feeling or proper co-operation between the respondent and the petitioner's family. But however this may be, the Court can not say that the testimony shows anything in the nature of a plot or a scheme on the part of the petitioner's father and mother to bring about a divorce.

The respondent claims in this connection also that the petitioner urged her to go out with Mr. Lord and fostered the intimacy. This is absolutely denied by the petitioner, who testifies that he remonstrated frequently until it became clear that the respondent would pay no attention to such remonstrances. He then visited an attorney and on the latter's advice employed detectives. He did testify at the conclusion of one day's hearing, when he was obviously nervously upset, that he did "lure the respondent into wrong doing." In explanation of this he testified the next morning that by that he meant that he was not indifferent to what his wife and Mr. Lord did but that, acting on his attorney's advice, he employed detectives to follow them, and that, further acting on said advice, he did not actively interfere with the respondent and Mr. Lord but that he did nothing to bring them together.

A careful consideration and reading of all the evidence on this phase of the case satisfies the Court that there was no connivance on the part of the petitioner in what the respondent was doing. The petitioner's explanation of his attitude seems reasonable.

The Court therefore finds that in this matter the petitioner has not been guilty of acts which would prevent his maintaining his petition, and that by a fair preponderance of the testimony he has proved that the respondent has been guilty of gross misbehavior. On the petition, therefore, the Court gives decision for the petitioner on the above ground.

The question of the custody of the two children presents a difficult situation. The Court is satisfied that both parents are fond of the boys and that as far as the material needs and care of the children are concerned they would be well looked after with either parent. The primary question before the Court is, of course, the best interests and welfare of the children themselves. During the hearing testimony was introduced relating to acts of the respondent and Mr. Lord since the filing of the petition as having a bearing on this question of custody. Several instances where the respondent and Mr. Lord had been together under unusual circumstances were related to the Court, and the Court is satisfied in its own mind that such occurrences took place. The whole testimony in the Court's opinion tends to show that the respondent and Mr. Lord have an attraction for each other which it will be hard for them to overcome. If the permanent custody of the children is awarded the respondent, the Court feels that they might be compelled to grow up and develop in an environment not conductive to their best welfare.

The Court finds that the custody of the children should be awarded the petitioner and that the respondent should have such fair and reasonable opportunity to see them as may be fixed in a decree to be entered.

For petitioner: Fitzgerald and Higgins.

For respondent: Hogan and Hogan.